(Court of Common Pleas, Clark Co., O.)

THE STATE OF OHIO v. JOHN M. GOODE, ROBERT S. BLACK.

---

Sec. 7032, Revised Statutes,, prohibiting participating in, or exhibiting to the public any base ball playing, on the first day of the week commonly called Sunday, is constitutional.

(Decided March 26, 1898.)

---

FISHER, J.

On January 12, 1898, the grand jurors, within and for the county of Clark, filed with the court the following indictment, to-wit:

"The State of Ohio, Clark county, ss.

"The Court of Common Pleas, Clark county, Ohio, of the term of January, in the year of our Lord one thousand eight hundred and ninety-eight.

"The jurors of the grand jury of the state of Ohio, within and for the body of the county of Clark, impaneled, sworn and charged to inquire of crimes and offenses committed within said county of Clark, in the name and by the authority of the state of Ohio, on their oaths do find and present, that John M. Goode and Robert S. Black, late of said county, on or about the 11th day of July, in the year of our Lord, one thousand eight hundred and ninety-seven, at the county of Clark aforesaid, wilfully, knowingly and unlawfully, did resist in the execution of his office, one John O. Sheets and

one George H. Bailey, they each being then and there an officer, to-wit: a deputy sheriff in and for the county of Clark, in the state of Ohio, by unlawfully threatening in a menacing manner, assaulting and beating him, the said John O. Sheets, and him the said George H. Bailey, and by violently preventing him, the said John O. Sheets, and him the said George H. Bailey, from arresting, detaining and taking into their custody the following persons, viz: one Martin, one Ashenbaugh, one Brady, one Hoffmeister, one Pyles, one Cavenaugh, one Whistler, one Stevick, one Coggswell, one Cooper, one Speen, one Torreyson, one Rickert, one Patterson, one Zinran, one Lyon, one Berry, and one Jordan, the Christian names of the aforesaid persons being to the grand jurors unknown, and did then and there further resist him, the said John O. Sheets, and him, the said George H. Bailey, by causing and inciting a large number of persons, the names of said persons being to the grand jurors unknown, to riotously assemble and then and there to unlawfully and riotously to congregate and to surround him, the said John O. Sheets, and him, the said George H. Bailey, and to make divers movements and great preparations to forcibly assault, beat, bruise, wound and kill him, the said John O. Sheets and him, the said George H. Bailey, when he, the said John O. Sheets and George H. Bailey, were then and there engaged in arresting and detaining and in attempting to arrest and detain, the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, and when he, the said John O. Sheets and he, the said George H. Bailey, were then and there attempting to execute a certain lawful warrant for the arrest of the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, he, the said John O. Sheets, and he the said George H. Bailey, being then and there in the due execution of their office, and being then and there duly authorized and qualified according to law as such deputy sheriffs, as aforesaid, and in obedience to the command of said lawful warrant, duly issued to the sheriff of Clark county, Ohio, and delivered to them as deputy sheriffs as aforesaid, by H. D. Brydon, then and there a duly elected, qualified and acting justice of the peace, in and for the township of Springfield, and county of Clark, in the state of Ohio, upon a certain affidavit duly signed and sworn to by one Charles S. Kay, on the 11th day of July, A. D. 1897, before said H. D. Brydon, as such justice of the peace, and

then and there filed in the office of said justice of the peace, charging the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, on the 11th day of July, A. D. 1897, at the county of Clark, in the state of Ohio, with unlawfully and knowingly, on said 11th day of July, A. D. 1897, which day being then and there the first day of the week, commonly called Sunday, of participating in, and in exhibiting to the public, with a charge for admittance, in a certain park and grounds located in the city of Springfield, said county of Clark, base ball, contrary to the form of the statute in such case made and provided, commanding the sheriff of said county of Clark, to take the said Martin, Ashenbaugh, Brady, Hoffmesiter, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, if they be found in said county, or if they shall have fled, that he pursue after them into any other county in the state, and then take and safely keep so that he have their bodies forthwith before said H. D. Brydon, as such justice of the peace aforesaid, or some other justice of the said county of Clark, to answer the said complaint as aforesaid, and be further dealt with according to law, which said warrant the said H. D. Brydon, as such justice of the peace aforesaid, had lawful authority to issue as aforesaid, and the said John O. Sheets, and the said George H. Bailey, being then and there duly authorized and qualified deputy sheriffs as aforesaid, was then and there on said day and year first aforesaid, in duty bound by law as such deputy sheriffs as aforesaid, to arrest and detain the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, and had lawful authority to serve and execute said warrant so delivered to them as aforesaid, and was then and there attempting to arrest and detain the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, by virtue said warrant aforesaid, and to execute the same, all of which he, the said John M. Goode, and he, the said Robert S. Black, then and there well knew, and the said John M. Goode and the said Robert S. Black, well knowing that the said John O. Sheets and the said George H. Bailey, were then and there deputy sheriffs, duly authorized and qualified, and had lawful authority as aforesaid, by resisting him, the said George H. Bailey, in manner and form as aforesaid, prevented him, the said John O. Sheets

and him, the said George H. Bailey, as such deputy sheriffs as aforesaid, from arresting and detaining the said Martin, Ashenbaugh, Brady, Hoffmeister, Pyles, Cavenaugh, Whistler, Stevick, Coggswell, Cooper, Speen, Torreyson, Rickert, Patterson, Zinran, Lyon, Berry and Jordan, and from executing said warrant so issued and delivered as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio:

"Horace W. Stafford,
"Pros. Att'y. of Clark Co., O."

To this indictment a general demurrer has been filed by counsel for the defendants, but it is conceded that if the law for the enforcement of which the affidavit and warrant, set up in the indictment were made, is constitutional, then that the indictment in all respects is sufficient, and properly charges an offense.

It is claimed by counsel for the defense, that sec., 7032a, Revised Statutes, in so far as it attempts to make it an offense to play base-ball on Sunday, is unconstitutional and if unconstitutional, the statute in that particular is void, and if void, the affidavit and warrant charged no offense against the law, and charging no offense, the officers were without authority in trying to make a arrest under the warrant, and the defendants had a right to resist the officers in their endeavors to serve the warrant.

In support of this claim, the court is referred to the case of the State v. Powell, 4 N. P. Reports, p. 302, decided by his Honor Judge Ong, of Cleveland, and the case decided by Judge Swartz, of the Police Court of Columbus, and also the constitution itself, sec. 7, Bill of Rights.

I find myself unable to agree with the learned courts expressing opinions upon this question in the cases cited.

The validity of the Sunday laws has been repeatedly passed upon and in clear and vigorous language sustained by our Supreme Court, not on the ground that the day is a holy day, and by Christians observed as a day for religious thought and worship, but on the ground that it is the day set by the state for rest, quiet and peace, for the welfare, health and happiness of all people, Jew, Christian and unbeliever.

Cincinnati v. Rice 15 Ohio 225; Sellers v. Dugan 18 Ohio 489; Bloom v. Richards 2 Ohio St. 389; McGatrick v. Nassau 4 Ohio St. 566.

And I have found no intimation in any of the subsequent decisions of our Supreme Court modifying the law as laid down in Bloom v. Richards. Judge Thurman, in writing the unanimous opinion of the court in that case, says: "We are then to regard the statute under consideration as a mere municipal or police

regulation whose validity is neither strengthened nor weakened by the fact that the day of rest it enjoins is the Sabbath day. Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be controverted. It is within the constitutional competency of the general assembly to require the cessation of labor and to name the day of rest." This doctrine has been asserted and made the rule of action in every state in the Union, except notably the state of California, in Ex parte Newman, 9 Cal., 502, which was disapproved in Ex parte Andrews, 18 Cal., 679.

Had the learned and patriotic gentlemen who penned sec. 7, of the Bill of Rights, understood when they did so, they were giving a death blow to, and wiping out the Sunday laws, I apprehend they would have added a clause of construction, as a lamp to guide the "present day destructionists." In exercising the power to name a day of rest, the legislature could have named any other day in the week, and required its observance. That it named Sunday is not strange; in fact being a Christian people, it would have been passing strange indeed, had any other day than Sunday been named.

When the Pilgrim Fathers landed at Plymouth Rock, they brought with them not only the spirit of religious liberty—the right to worship Almighty God according to the dictates of one's own conscience—but they brought also, as well, the Christian Sabbath, and the one became as much a part of the organic or fundamental law of the land, as the other, and from the very beginning of the establishment of the colonial governments down to the present time, the right to regulate the observance of the one, as a fixed period for rest and cessation from labor, has been as broadly recognized, as has been the right of absolute freedom of religious worship.

While the right to enjoy absolute religious liberty and the right to appoint a day of rest and regulate its observance have gone hand in hand from the very formation of the government, it has never been questioned that the broadest enforcement of the one in any way conflicts with, or hinders the broadest enjoyment of the other, because the day fixed for rest is the Sabbath Day.

The one has to do with the spiritual welfare of man, over which the state has no control, and with which it has no right to interfere; the other has to do with the physical welfare of man, as a member of society, in which the state is vitally interested, and over which the state has control.

"Upon no subject," says Justice Field, in Ex parte Newman, 9 Cal., 502-520-529, "is there such a concurrence of opinion among philosophers, moralists and statesmen of all nations, as on the necessity of periodical cessation from labor. One day in seven is the rule, founded in experience and sustained by science."

The selection of a day therefore, on which it is required man shall cease from labor, is by law to sanction a rule of conduct which the entire civilized world recognizes as essential to the physical and moral well-being of society, and the uniform selection of Sunday as that day, is but the recognition of the sentiment and will of the entire people, from the formation of the government.

It being admitted that the state has power to provide by legislation, for a day of rest, the question of selection is one of expediency, and Sunday, being in law like any other day of the week, the statute fixing Sunday as the day for rest, relaxation, peace and quiet, would not be vitiated or weakened because the day selected is the day which the Christian observes as his day for religious thought and worship.

Bloom v. Richards, 2 Ohio St., 389.

In the case of Hennington v. The State of Georgia, 90 Ga. 396, the court decided, under a statute similar to our own, that a statute making it unlawful to run a train on Sunday is not unconstitutional. This case was taken on error to the Supreme Court of the United States, and the court of Georgia sustained, and the law held valid on the same grounds put by that court. The case was decided in May, 1896, and reported in 163 U. S., 299. Judge Harlan, in deciding the case, says: "As the contention is that the court erred in not adjudging the statute in question to be unconstitutional, it is appropriate that the grounds upon which it proceeded, should fully appear in this opinion," and quotes as follows:

"With respect to the selection of a particular day in each week, which has been set apart by our statute as the day of rest for the people, religious views and feelings may have had a controlling influence, we doubt not they did have; and it is probable that the same views and feelings had a very powerful influence in dictating the policy of setting apart any day whatever as a day of enforced rest. But neither of these considerations is destructive of the police nature and character of the statute. If good and sufficient police reasons underlie it, and substantial police purposes are involved in its provisions, these reasons and purposes constitute its civil and legal justification, whether they were or not the direct and immediate motives which induced its passage, and have for so long a time kept it in force.

"Courts are not concerned with the mere beliefs and sentiments of legislators, or with the motives which in-

fluenced them in enacting laws which are within legislative competency. That which is properly made a civil duty by the statute, is none the less so because it is also a real or supposed religious obligation; nor is the statute vitiated or in any wise weakened by the chance, or even the certainty, that in passing it the legislative mind was swayed by the religious, rather than by the civil aspect of the measure. Doubtless, it is a religious duty to pay debts, but no one supposes that this is any obstacle to its being exacted as a civil duty. With few exceptions, the same may be said of the whole catalogue of duties specified in the ten commandments. Those of them which are purely and exclusively religious in their nature, cannot be made civil duties; but all the rest of them may be, in so far as they involve conduct as distinguished from mere operations of mind or states of the affections. Opinions may differ, and they really do differ, as to whether abstaining from labor on Sunday is a religious duty; but whether it is or not, it is certain that the legislature of Georgia had prescribed it as a civil duty. The statute can fairly and rationally be treated as a legitimate police regulation, and thus treated it is a valid law. There is a wide difference between keeping a day holy as a religious observance, and merely forbearing to labor on that day in one's ordinary vocation or business pursuit."

The same doctrine is announced in the case of Specht v. The Commonwealth, 8 Pa. St., 312; John W. Judifind v. The State of Maryland, 22 L. R. A., 721; Froticsteine v. Mobile, 4 Ala., 725; Commonwealth v. Has, 122 Mass., 40; The People of N. Y. v. Havnor, 149 N. Y., 195.

In the last named case, the court say: "While questions have been raised as to noiseless and inoffensive occupations that can be carried on by one individual without requiring the services of others, as well as to persons who observe the seventh instead of the first day of the week, still the rule is believed to be general throughout the Union, although not generally enforced, that the ordinary business of life, shall be suspended on Sunday, in order that thereby the physical and moral well-being of the people may be advanced.

"The inconvenience to some is not regarded as an argument against the constitutionality of the statute, as that is an incident to all general laws. Sunday statutes have been sustained as constitutional almost without exception."

In the case of The People of the State of New York v. Moses, 140 N. Y., 265, it is held, that the provision of the penal code, (paragraph 265), prohibiting fishing on Sunday, "is absolute and forbids fishing on that day anywhere in the state and under all circumstances."

Earl, Judge, says, "The Christian Sabbath is one of the civil institutions of the state, and that the legislature for the purpose of promoting the moral and physical well-being of the people, and the peace, quiet and good order of society, has authority to regulate its observance, and prevent desecration by any appropriate legislation, is unquestioned." To the same effect is the case of Lindenmuller v. The People, 33 Barb., **p.** 548.

In a late case, Norfolk & W. R. R. Co. v. Commonwealth of Virginia, 34 L. R. A., p. 105, it is held that the state laws prohibiting the running of railway trains on Sunday, when enacted in good faith for the preservation of the health and morals of the people, without discrimination against interstate or foreign commerce, was not in conflict with the constitution of the United States. The case is well considered, and worthy of attention.

In the case of The State v. O'Rourke, et al., 35 Neb., 615, under a statute providing that any person of 14 years of age or upwards, who shall on Sunday be engaged in "sporting," the court held the law constitutional that playing baseball on Sunday came within the definition of sporting. Our own Supreme Court, in equally as clear and vigorous language has announced the same doctrine.

McGatrich v. Mason, 4 Ohio St., 566; Bloom v. Richards, 2 Ohio St., 387.

In Bloom v. Richards, it is nowhere intimated that the legislature has not the power to determine what acts are injurious to the well-being and physical welfare of the people—but on the contrary, the court recognizes the power to say what on that day shall be unlawful, is with the legislature, the only limitation being that it must be for the general welfare, that the purpose to be reached be a public purpose, and that the law in fact is a police law.

Keeping in mind that it is a police regulation, the power is not limited to things, the doing of which is "per se" immoral, or in the nature of a nuisance, but extends to every thing temporal, which the legislature, acting in good faith, believes would interfere with the preservation of the day of rest, the peace, quiet and well being of the people, the health, and morals and general good. It is not immoral to hunt or fish on Labor day, yet no one will claim that under our statute it is not unlawful to do either on Sunday, however private and secluded, or that such statute infringes upon sec. 7 of the Bill of Rights.

It is not within the power of the court to say whether the thing prescribed is injurious to the welfare or not—the legislature having declared it so, it must be so accepted till repealed — and this power rests with the people, and not with the judge.

The court has no right to assume that the legislature proscribed an act and made it an offense to be done on Sunday, simply because it was Sunday—it is the business of the courts to assume that the legislature acted lawfully and in good faith, and that the act proscribed was proscribed because, if heretofore lawful, in the opinion of the legislature to permit the continuance on the day of rest, would destroy the object for which it was set apart.

Nor does the validity of the statute depend upon whether the thing prohibited is a noisy or quiet pursuit, carried on in a private manner,—absolute prohibition means absolute prohibition, and must be so enforced. Nor is it essential to the validity of the act that those who conscientiously observe the seventh day of the week as their Sabbath should be excepted from its operation. Such exceptions are frequently made, but when not made, the failure to make them in no way affects the validity of the statute, and those who believe in the seventh day as the Sabbath must suffer the inconvenience for the general good. All the authorities agree upon this point, and the cases above cited, including those of our own court, are undoubted authorities in its support.

The rule announced by the supreme court of the United States and all state courts, is, "that when a statute has substantial relation to the public health, the public morals, or the public safety, and no right secured by fundamental law is invaded, it should be given effect, and this even though the religious views and feelings of those who enacted the law were a controlling influence."

I think secs. 7032-7032a, and 7033, have substantial relation to the public health, the public morals, and the public safety, and interfere with no rights secured by fundamental law.

If a law which, in essential respects, betters for all the people the conditions, sanitary, social, moral, and individual, under which their daily life is carried on, and which contributes to insure for each, even against his own will, his minimum allowance of rest, peace and quiet, cannot be classed as a police regulation, it would be difficult, it seems to me, to imagine any law that could.

The demurrer is therefore overruled. Horace W. Stafford, and O. F. Serviss, attorneys for state.

George C. Rawlings, and Bowman & Bowman, attorneys for defendants.